## Commonwealth v. Cohen.

*John H. Maurer*, Assistant District Attorney, and *John Monaghan*, District Attorney, for Commonwealth.

*Henry W. Braude* and *Aaron W. White*, for defendant.

HEILIGMAN, J., March 27, 1931.—This is an appeal from a judgment of Magistrate V. E. Fahnestock, in a summary proceeding, adjudging the defendant, Morton M. Cohen, guilty of giving false or insufficient weight, under the Act of May 11, 1911, P. L. 275, as amended, in three instances, and fining him the sum of $25 and costs in each case.

The practice upon such appeal is set forth in Com. *v.* Benson, 94 Pa. Superior Ct. 10. There it is stated: "If an appeal is asked for, this is directed to the Court of Quarter Sessions, and, if allowed, the case is heard de novo before a judge of that court. In such case, the Court of Quarter Sessions does not sustain or reverse the judgment of the inferior magistrate—it does not review such judgment or the matters alleged as ground for appeal—it finds the defendant either guilty or not guilty—it either convicts or acquits him. . . . The judgment on writs of *certiorari* from a summary conviction before an alderman or justice of the peace is to (1) sustain or (2) set aside the judgment; on *appeals* from such conviction the judgment is (1) guilty or (2) not guilty; (1) conviction or (2) acquittal. It has been our practice, if the judgment of the Court of Quarter Sessions is not in substantial accordance with this well settled practice, to send the record back that a proper judgment in accordance with said practice may be entered: Com. *v.* Congdon, 74 Pa. Superior Ct. 286. We do not hold that any set form of judgment must be used: Com. *v.* Gipner, 118 Pa. 379; but the record must show a hearing by the court to which the appeal is taken and a definitive judgment by that court

26

upon the facts and the law applicable to those facts, and not ·a mere review of the proceedings before the magistrate."

Section 20 of the Act of May 10, 1927, P. L. 866, relating to appeals from summary convictions of magistrates, does not change in substance the Act of April 17, 1876, P. L. 29, as amended by the Acts of April 22, 1905, P. L. 284, and July 11, 1917, § 1, P. L. 771.

Accordingly, the case was heard *de novo* upon the merits before Heiligman, J., without a jury, in the court of quarter sessions. There were two hearings, the first being held on Feb. 20, 1931, at which time testimony was heard relating to the sale, delivery and weighing of two units of coal in the home of Cecelia H. Ruoff, No. 3344 North Park Avenue, Philadelphia, on Jan. 7, 1931. The second hearing was held on Feb. 27, 1931, and testimony was heard relating to the sale, delivery and weighing of two units of coal in the home of Anna Beck, No. 3229 Oxford Street, Philadelphia, on Dec. 23, 1930. At this latter hearing it was agreed by counsel that Mrs. Pauline Mahoney would testify concerning the sale, delivery and weighing of two units of coal in her home at No. 546 East Geneva Avenue, Philadelphia, on Jan. 9, 1931.

From the testimony it appears that the defendant operated a coal yard and sold anthracite coal by the unit, each unit purporting to be 2000 pounds in weight. On three dates units of coal were delivered by the defendant and paid for as units weighing 2000 pounds each. In each instance, within two hours after the delivery of the coal, the coal was weighed by an impartial third party, who has been in the business of weighing commodities for a number of years. This person weighed the coal in each case in small lots of less than 200 pounds each upon a standard steelyard beam scale. The result of the weighing was as follows: Cecelia H. Ruoff, No. 3344 North Park Avenue, Philadelphia, shortage of 317 pounds in two units; Anna Beck, No. 3229 Oxford Street, Philadelphia, shortage of 406 pounds in two units; Pauline Mahoney, No. 546 East Geneva Avenue, Philadelphia, shortage of 255 pounds in two units, as agreed by counsel.

There is no doubt in the court's mind that the evidence fully indicated that there was a shortage of coal in every case, but defendant contends that since the provisions of the Act of May 11, 1911, P. L. 275, and its amendments, were not strictly followed he cannot be convicted and fined for the shortages in weight.

The Act of May 11, 1911, and its amendments provide for the appointment of inspectors of weights and measures in each county and in the cities of the second and third classes, which inspectors are to be supplied with United States standard tests of weights and measures. These tests are to be stamped or marked as being correct. The only duties and powers imposed upon the inspectors are to test weighing and measuring devices for the purpose of condemning or approving the same. Section 3 of the act as amended provides that: "Each person who shall, directly or indirectly, or by his servant or agent, or as the servant or agent of another, violate any of the provisions of this act, or give or offer to give any false or insufficient weight or measure, or use any weighing device after it shall have been condemned and before it shall have been adjusted and sealed, or obstruct or attempt to obstruct any inspector in the performance of his duty, shall, upon conviction thereof in a summary proceeding before any alderman, magistrate or justice of the peace of the proper city or county, for the first offense, be sentenced to pay a fine not to exceed twenty-five dollars."

From the above summary of the Act of May 11, 1911, as amended, it is clear that the duties of the inspectors are confined to inspecting weighing and measuring devices of persons engaged in selling commodities to the public. For

the purpose of testing such devices the act requires that inspectors be supplied with United States standard tests marked as being correct for the purposes of comparison. There is no provision that these inspectors are to weigh or measure the commodities alleged to be of short weight. The act specifically makes the giving or offering to give false weight or measure illegal, without fixing methods by which such an act shall be detected and proved. In the absence of specific directions in the statute, the Commonwealth is entitled to prove violations of the act by the ordinary methods. In the case at bar, the court has accepted the Commonwealth's evidence for what it is worth, and finds from it, after a careful scrutiny of the testimony offered by the defendant, that it is sufficient to justify the conclusion that the defendant has given false weight or measure.

Defendant has also called the attention of the court to the Act of June 1, 1911, P. L. 533. The relevant section of that act is section 6, which provides that: "It shall be the *privilege* or *right* of any purchaser of anthracite coal . . . before accepting the same, to have all of said coal or any load of it weighed, at his expense, at any of the weigh-stations designated under the provisions of section two of this act, provided such weigh-station is located within ten city blocks of the place of loading or of the place of delivery of said coal. . . ." This section further provides that the driver is to be given an opportunity to notify his employer of the weighing so that the latter may be present. It is also provided that "no purchaser shall avail himself of the *privileges* of this act, in providing for the weighing of his coal" without first paying 50 cents a ton for the extra cartage. The final proviso is as follows: "That this method of weighing shall not be binding on any purchaser of coal if he shall not deem it convenient, satisfactory or expeditious."

This last mentioned act is not a law governing the giving of false weights or measures. It provides, however, a preliminary method that a buyer may follow, if he so desires, preparatory to invoking the laws against the giving of short weight. The act specifically says that it is a privilege of the buyer to have the coal weighed at a public weigh-station; it is not mandatory upon the buyer, and the last proviso above quoted stresses this fact. Moreover, it is not to be followed if the public scales are not within ten blocks of the place of delivery. It is not difficult to discern the purpose of the act. The average householder in Philadelphia, to which this act solely applies, has no means of weighing a ton of coal in his home, and this act was in all probability designed to give such a buyer an opportunity to have the suspected coal weighed, and by an impartial third party. If the weighing showed short weight, the buyer was then prepared to invoke the laws against giving short weight. Since the act does not bind the buyer to use the public scales, it follows that the buyer would be prepared likewise if by some other method he obtained sufficient knowledge of the short weight to establish beyond a reasonable doubt in a court of law that the weight was false.

In the case at bar, the buyer obtained sufficient evidence of the short weight without availing herself of the privilege granted to her under the statute in question, and since, under our interpretation of the statute, she was not obliged to comply with the statute, the defendant is still amenable to conviction and fine under the Act of May 11, 1911, and its amendments.

### Sentence and order.

And now, to wit, March 27, 1931, pursuant to the opinion in the above case, the court finds Morton M. Cohen, the defendant above named, guilty of giving false and insufficient weight or measure in the sale of coal to Anna Beck on Dec. 23, 1930, within the County of Philadelphia, and the court further finds

Morton M. Cohen, the defendant above named, guilty of giving false and insufficient weight or measure in the sale of coal to Cecelia H. Ruoff on Jan. 7, 1931, within the County of Philadelphia, and the court further finds Morton M. Cohen, the defendant above named, guilty of giving false and insufficient weight or measure in the sale of coal to Pauline Mahoney on Jan. 9, 1931, within the County of Philadelphia, all in violation of the Act of May 11, 1911, P. L. 275, and the amendments thereto, namely, Act of April 21, 1921, P. L. 265, and Act of July 11, 1923, P. L. 992, and he is sentenced to pay the costs of the prosecutions and to forfeit and pay a fine of $25 for each violation.

And it is further ordered and decreed that in default of the payment of said fine and costs for each violation aforesaid, the said defendant shall be committed to the Philadelphia County Prison for the term of twenty-five days on each such conviction, said terms of imprisonment to run consecutively and not concurrently.